UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| COUNTESS CLEMONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 1:11-CV-339 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| CORRECTIONS CORPORATION OF ) | |
| AMERICA, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

___

| | |
|---|---|
| G. MICHAEL LUHOWIAK, *Administrator* ) | |
| *Ad Litem of the Estate of Roland Lebron* ) | |
| *Clemons, Deceased,* ) | |
| ) | 1:11-cv-340 |
| Plaintiff, ) | |
| ) | Judge Curtis L. Collier |
| v. ) | |
| ) | |
| CORRECTIONS CORPORATION OF ) | |
| AMERICA, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM & ORDER**

Before the Court is Defendant Corrections Corporation of America's ("CCA") objection to the Report and Recommendation ("R&R") issued by Magistrate Judge William B. Mitchell Carter recommending sanctions for spoliation of video evidence (Court File No. 139). For the following reasons, the Court **DENIES** CCA's objection and **ADOPTS** the R&R.

**I.   BACKGROUND**

In the early evening of November 19, 2010, Plaintiff Countess Clemons ("Clemons") went into premature labor. At the time, she was in custody at CCA's Silverdale Detention Facility ("CCA

Silverdale") serving a sentence imposed by Defendant Hamilton County, Tennessee ("Hamilton County"). Clemons was eventually transported to Erlanger Hospital, but her child did not survive. Plaintiffs Clemons and G. Michael Luhowiak (who as administrator ad litem of the deceased child filed a related suit, Case No. 1:11-cv-340) bring claims, *inter alia*, under 42 U.S.C. § 1983 alleging that CCA, Hamilton County, and CCA employees were deliberately indifferent to her and her child's serious medical needs by failing to act promptly when Clemons complained of illness on November 19. Plaintiffs filed identical motions for sanctions regarding spoliation of video evidence taken inside CCA Silverdale on November 19 (Court File No. 41; all court file numbers are from the lead case unless otherwise specified).

## II.  STANDARD OF REVIEW

The Court conducts a *de novo* review of the portions of the report and recommendation to which objections are made, and may accept, reject, or modify, in whole or in part, the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

## III.  DISCUSSION

### A.  Report and Recommendation

At the evidentiary hearing regarding the surveillance tapes, testimony was given demonstrating that the footage in question would have helped establish the disputed timeline of events on November 19, 2010, specifically by showing when Clemons, individual defendants, and others moved about the facility and what they were doing. The magistrate noted that such evidence could also have helped corroborate testimony of Clemons and her witnesses. Because the deliberate

2

indifference claim relates in large part to the timeliness of attention to and treatment of Clemons's health issues on November 19, the Magistrate Judge concluded that the video evidence was relevant to the law suits.

The jury, however, will never have the benefit of the surveillance tapes, as they were destroyed before being preserved for this litigation. Because the video system at CCA Silverdale overwrites all video every ninety days, an employee must manually copy footage from specific cameras in order to preserve it. When the events in question unfolded, Michael T. Quinn ("Quinn") was the Assistant Warden of CCA Silverdale. The day after Clemons's miscarriage, Quinn reviewed the relevant video from the previous day. He then produced a "Description of Incident" containing a timeline of events, which Quinn testified he prepared based entirely on his review of the footage from November 19. Quinn also testified that, based on the video tapes, he did not think there had been an emergency. Immediately after Clemons filed a grievance on Novermber 23, Quinn again reviewed the tapes and concluded that staff did not act with malfeasance.

After Paul Jennings, CCA Silverdale's Warden, received a letter from Clemons's counsel asking him for the relevant video, he tasked Quinn with obtaining a copy. Quinn was aware of the letter from Clemons's counsel. Quinn assigned part-time maintenance and IT worker John Kearns ("Kearns") the job of copying the video from November 19. Kearns reported to Quinn that he successfully made the copies. But no one checked to make sure he did. As it turned out, Kearns had actually copied video from November 18. By the time this was discovered, ninety days had passed and the footage from November 19 had been deleted.

Based on his conclusion that (1) CCA had a duty to preserve the video, (2) the video was relevant to Plaintiffs' claims, and (3) failure to preserve it was done with a culpable state of mind,

3

here, gross negligence, the Magistrate Judge recommended the Court apply the following sanctions:[1]

> (1) Instructing the jury that CCA was under a duty to preserve video evidence of the events which unfolded at [CCA Silverdale] on November 19, 2010, that CCA failed to do so, that such failure constituted gross negligence, and that the jury should find the video evidence lost by CCA would have been unfavorable to CCA,
> (2) Prohibiting CCA from offering any evidence or testimony from witnesses who viewed the now unavailable video footage, and
> (3) Awarding plaintiffs' reasonable attorney's fees and costs to prosecute plaintiffs' motion for sanctions for spoliation of evidence.

(Court File No. 139, p. 21).

### B. Objections

CCA filed a timely objection (Court File No. 140) to the R&R, and Plaintiffs filed a response (Court File No. 141). Specifically, CCA argues that the Magistrate Judge erred in concluding (1) that CCA was grossly negligent in failing to preserve the video; (2) that the footage was sufficiently relevant to Plaintiffs' claims, (3) that the jury should be instructed that the footage would have been unfavorable to CCA, and (4) that CCA should pay attorney's fees related to the sanctions dispute.

#### 1. Gross Negligence

In analyzing whether sanctions are appropriate, the Court must determine whether the party responsible for the spoliation had a culpable state of mind. *Beaven v. United States Dep't of Justice*,

---

[1] In *Beaven v. United States Dep't of Justice*, United States Court of Appeals for the Sixth Circuit provided the following framework for determining whether sanctions should be imposed for spoliation:
> [A] a party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

622 F.3d 540, 553 (6th Cir. 2010) (citing *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir.2002)) (internal quotation marks omitted).

4

622 F.3d 540, 553 (6th Cir. 2010). "[T]the 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed 'knowingly, even if without intent to [breach a duty to preserve it], or negligently.'" *Id.* at 554 (quoting *Residential Funding Corp.*, 306 F.3d at 108) (brackets in original). Gross negligence is defined as "a conscious neglect of duty or a callous indifference to consequences" or "such entire want of care as would raise a presumption of a conscious indifference to consequences." *Thrasher v. Riverbend Stables, LLC*, No. M200802698COARMCV, 2009 WL 275767, at *4 (Tenn. Ct. App. Feb. 5, 2009) (quoting *Jones v. Tennessee Riders Instruction Program, Inc.*, No. M2006-01087-COA-R3CV, 2007 WL 393630, at * 2 (Tenn. Ct. App. Feb. 5, 2007)); *see also Wilson v. GMAC Fin. Servs. Corp.*, No. 2:06-CV-77, 2009 WL 467583, at * 5 (E.D. Tenn. Feb. 24, 2009) (citing *Buckner v. Varner*, 793 S.W.2d 939, 941 (Tenn. Ct. App. 1990)) (articulating same standard).

In addition to the presence of an undisputed duty to preserve the video, the Magistrate Judge relied on three additional factors in finding gross negligence. First, Plaintiffs did not delay in requesting the tapes be preserved; Clemons's counsel sent two letters within a week requesting CCA preserve them. Second, Quinn knew how important the video evidence was, as demonstrated by his heavy reliance on it in during his own review. And finally, CCA exercised significantly less care than required for preserving important evidence related to an extremely serious matter when (1) Quinn assigned the task of copying over the tapes to a part-time maintenance and IT worker and (2) neither Quinn nor anyone else attempted to make sure a correct copy had been made, despite knowing that the system would erase the footage after ninety days.

CCA does not deny that Plaintiffs informed CCA within a week that the video should be preserved and that CCA knew the tapes would be erased within ninety days. However, CCA argues

5

that Quinn, "understood that the video footage could prove important in the future and took completely appropriate and previously-successful steps to preserve the video footage" (Court File No. 140, p. 8). This is based on testimony that Kearns had successfully made copies for Quinn before. Although CCA admits that "Quinn arguably should have examined the video footage that Kearns preserved," it notes that "Quinn repeatedly viewed the video footage directly from the various monitors to determine whether CCA employees committed any wrongdoing and, therefore, did not think to double-check Kearns' attempts at preservation" (*Id.*). Finally, CCA argues that Quinn did not disregard the "gravity of the event," as his understanding was that Clemons' medical issues were such that delay in her care would not have contributed to the death of her unborn child.

CCA's objection is not well taken. The CCA officials involved were keenly aware of the duty to preserve this important evidence. Yet Quinn tasked a part-time maintenance/IT worker to do the job and never checked to make sure a copy had correctly been made, despite knowing the footage was important and would be lost forever after ninety days. That Quinn may have had Kearns successfully make copies in the past and not doubled checked their accuracy does not change the analysis. Driving a car erratically numerous times without incident is not a defense to reckless driving when one finally crashes. Further, that Quinn previously viewed the footage in question during his incident review does not explain why he did not check the copy. While it may have been beneficial for him to have had the opportunity to view the tapes, the issue here was whether *others* would. And Quinn did not take adequate steps to ensure they would.

Finally, the Court is not persuaded by CCA's attempt to diminish the gravity of the event by pointing to Quinn's testimony that he believed that any delay in Clemons's treatment would not have affected whether the fetus survived. This argument misses the point. The facts show that an inmate

6

at CCA Silverdale who was complaining of severe pain and began bleeding gave birth prematurely to a child who did not live. What Quinn believed about medical causation should have no bearing on the gravity of the event. This was a very serious matter, and anyone involved should have known that the tapes were important and that sufficient steps needed to be taken to preserve them. Because CCA displayed "such entire want of care as would raise a presumption of a conscious indifference to consequences," the Court will deny its objection to the Magistrate Judge's conclusion that it acted with gross negligence in failing to preserve the video. *Thrasher*, 2009 WL 275767, at *4.

### 2. Relevance

CCA next objects to the Magistrate Judge's determination that the destroyed evidence was sufficiently relevant to Plaintiffs' claims. A party moving for spoliation sanctions must show "that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Beaven,* 622 F.3d at 553 (citing *Residential Funding Corp.*, 306 F.3d 99 at 107).[2]

The video included footage of the pod where Clemons was kept, the hallways in which she and CCA personnel moved during the times in question, and the area where she was moved before an ambulance took her to the hospital. CCA's objection is based on several arguments: (1) the footage would not provide insight into the causation of the miscarriage and death of Clemons's

---

[2]The moving party need not show that the lost evidence would have *necessarily* supported its claim; rather it must only show that it could have. *See Jones v. Staubli Motor Sports Div. of Staubli Am. Corp.*, 897 F. Supp. 2d 599, 609 (S.D. Ohio 2012) ("[T]he Sixth Circuit in *Beaven* has since described the third prong differently, requiring only that a party show that a reasonable trier of fact *could* find that the missing evidence would support that party's claim.") (emphasis in original) (citing *Beaven,* 622 F.3d at 553).

7

unborn child; (2) the footage was of poor quality, making it difficult to identify individuals and see what they are doing; (3) the recordings do not contain audio; (4) many of the events that took place are undisputed; and (5) there is better evidence of the events that transpired, including eyewitness testimony of Clemons, other inmates, and CCA personnel.

The Court cannot conclude that CCA's objection shows that the Magistrate Judge erred. As a preliminary matter, the Court notes that CCA's argument that the footage is not relevant flies in the face of Quinn's testimony that the video was central to his incident review and in determinating that malfeasance did not occur. The video is clearly relevant to what occurred on the evening in question. As for CCA's specific contentions, first, although the video does not provide evidence of medical causation, at the very least it bears on the highly relevant issue of the timing of the movements of various CCA personnel, Clemons, and other inmates (who are alleged to have sought help for Clemons).[3] Issues of timing are at the heart of whether CCA personnel were deliberately indifferent to Clemons's medical needs. Second, any argument that the footage's poor quality significantly impacts its relevance is belied by Quinn's testimony that it was crucial to compiling his report. Third, while audio would have been helpful, it is not necessary in determining who went where and at what time.

---

[3] As the R&R explains, the video would have helped show a number of relevant details: whether and when Clemons was assisted through the pod's main room toward the bathroom, whether and when Badger went toward the bathroom in the pod, whether and when inmates were beating on the pod windows trying to secure help for Clemons, whether and when Badger went toward the pill call area where Nurse Smith was stationed, who wheeled Clemons to R&D and when, the demeanor of staff and Clemons at the time Clemons was being rolled down the hall to R&D, and whether Garcia ever approached that side of the cell area where Clemons was being housed in R&D.

(Court File No. 139, p. 18).

8

Fourth, the fact that many of the events in question are undisputed does not diminish the Plaintiffs' need to establish disputed ones, including the exact timing of when Clemons was brought from area to area in CCA Silverdale and how she and others were acting at the time. Finally, although there may be eyewitness testimony that helps establish the timeline, it does not make the video footage redundant or irrelevant, as there may be serious credibility issues with Clemons and other inmate witnesses. *See, e.g. Pollard v. City of Columbus, Ohio*, No. C2-11-CV-0286, 2013 WL 5334028, at* 5 (S.D. Ohio Sept. 23, 2013) ("Although Defendants have exhaustively listed alternative sources of evidence that the Plaintiff might employ in its case, that is not the proper inquiry. Rather, Circuit precedent requires only that the evidence be 'relevant' to a claim or defense.") (citing *Beaven*, 622 F.3d at 553). Accordingly, CCA's objection to the Magistrate Judge's relevance analysis fails.

### 3. Adverse Inference Instruction

CCA argues that even if the video evidence was relevant and CCA acted with gross negligence in losing it, the Magistrate Judge nonetheless erred in recommending a mandatory adverse instruction rather than a permissive one. The Court applies federal law when addressing this question, as "the authority to impose sanctions for spoliated evidence arises not from substantive law but, rather, from a court's inherent power to control the judicial process." *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (omitting internal quotation marks). "'A proper spoliation sanction should serve both fairness and punitive functions,'" and "its severity should correspond to the district court's finding after a 'fact-intensive inquiry into a party's degree of fault' under the circumstances, including the recognition that a party's degree of fault may 'rang[e] from innocence through the degrees of negligence to intentionality.'" *Beaven*, 622 F.3d at 554 (6th Cir. 2010)

9

(quoting *Adkins*, 554 F.3d at 652-53). Courts look to both the culpability of the party destroying the evidence and the prejudice caused to the other side when deciding on a proper sanction. *Clark Const. Grp., Inc. v. City of Memphis*, 229 F.R.D. 131, 141 (W.D. Tenn. 2005) (citing *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79, 81 (3d Cir.1994)).

A district court has the discretion to "impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence." *Adkins*, 554 F.3d at 653. An adverse inference instruction, which permits the factfinder to infer that destroyed evidence would have been unfavorable to the offending party, may be given when evidence is negligently destroyed. *Clark Const. Grp., Inc.*, 229 F.R.D. at 140. "Whether an adverse inference is permissive or mandatory is determined on a case-by-case basis, corresponding in part to the sanctioned party's degree of fault." *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, No. 13-3025, 2014 WL 2869286, at 6 * (6th Cir. June 25, 2014) (quoting *Flagg v. City of Detroit*, 715 F.3d 165, 178 (6th Cir. 2013)).

In the instant case, CCA argues that the magistrate judge should have recommended a permissive rather than a mandatory inference instruction. CCA points to *Clark Const. Grp.*, where the defendant acted with gross negligence in destroying documents and the court applied a rebuttable adverse inference. 229 F.R.D. at 141. Other cases cited by CCA make similar points, though they only address ordinary negligence not gross negligence. *See, e.g.*, *Flottman v. Hickman Cnty., Tenn.*, No. 3:09-0770, 2010 WL 4537911, at *1 (M.D. Tenn. Nov. 3, 2010) (citing *AEP Memco, LLC v. Wepfer Marine, Inc.*, 2006 WL 2846374, at * 8 (W.D. Tenn. Sept. 30, 2006)).

However, courts have also noted that non-mandatory inference instructions are a very mild sanction. The Sixth Circuit explained that a permissive instruction is "simply a formalization of

10

what the jurors would be entitled to do even in the absence of a specific instruction." *West v. Tyson Foods, Inc.*, 374 F. App'x 624, 635 (6th Cir. 2010). The Court thus concluded that "even if the district court had not given the instruction . . . , the jury's discretion would not have been affected in any way, and thus no relief is warranted." *See also Jain v. Memphis Shelby Cnty. Airport Auth.*, No. 08-2119-STA-DKV, 2010 WL 711328, at *5 (W.D. Tenn. Feb. 25, 2010) (explaining that such a "sanction is one of the mildest sanctions for spoliation available to the Court" and that "[t]he permissible inference is far less drastic than dismissal or even the exclusion of other evidence. In fact, a permissible inference is less punitive than a rebuttable inference that the evidence would have been favorable to Plaintiff."); *Nejo v. Tamaroff Buick Honda Isuzu Nissan*, 88 F. App'x 881, 888 (6th Cir. 2004) (treating jury instruction permitting, but not requiring the jury to draw an inference, as a mild sanction for spoliation).

In the instant case, the Court agrees with the Magistrate Judge's recommendation of a mandatory inference instruction. Such a sanction is appropriate to account for the culpability of CCA and remedy the prejudice to Plaintiffs. *Beaven* acknowledged that a party's culpability may "rang[e] from innocence through the degrees of negligence to intentionality." 622 F.3d at 554. The court recognized that the particular degree of negligence may be germane to a sanctions analysis, as all negligence does not implicate the same level of culpability. As explained above, CCA destroyed the evidence with gross negligence, its officers displaying "such entire want of care as would raise a presumption of a conscious indifference to consequences." *Thrasher*, 2009 WL 275767, at *4. A mandatory inference instruction will serve as an encouragement for CCA to better safeguard and preserve such evidence in the future. A permissive inference instruction would not be up to that task.

11

The prejudice to Plaintiffs is also critical. As explained above, the video would have shown how Clemons and others were acting and where they went and when. Timing is central to the deliberate indifference claim, and a time-stamped video would have been extremely helpful in establishing a clear timeline.[4] It could also have helped corroborate the testimony of inmate witnesses, who often suffer from serious credibility problems. In *Kounelis v. Sherrer*, for instance, the district court emphasized the prejudice to the plaintiff inherent in "putting the word of a convicted felon against the collective testimony of the prison authorities." 529 F. Supp. 2d 503, 521 (D.N.J. 2008) (reversing magistrate judge's order denying an inference instruction sanction against prison officials who negligently destroyed a video tape).

### 4. Attorney's Fees

CCA objects to the Magistrate Judge's recommendation that attorney's fees and costs associated with prosecuting this motion for sanctions should be awarded to Plaintiffs. CCA points to *Flottman*, 2010 WL 4537911, for the proposition that attorney's fees are inappropriate in a case dealing with the negligent, as opposed to intentional, destruction of evidence. Further, CCA asserts that the Court should wait until after the merits of the case are decided.

Federal Rule of Civil Procedure 37 provides that the payment of reasonable expenses, including attorney's fees, is an appropriate sanction. The Court notes that this case deals with gross negligence, a higher level of culpability than ordinary negligence, which occurred in *Flottman*. In another spoliation case dealing gross negligence, the court awarded attorney's fees, and did so

---

[4] To the extent that the video might not have been favorable to Plaintiffs, the Court is mindful that "the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss." *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 75 (S.D.N.Y. 1991).

12

before the merits of the case were decided. *Clark Const. Grp., Inc.*, 229 F.R.D. at 142. That court noted the significant burden put on the plaintiff in litigating the case without the destroyed evidence. The Court trusts that it has sufficiently explained the burden imposed on Plaintiffs in this case. Accordingly, the Court agrees that attorney's fees and costs are an appropriate here. The Court **ORDERS** Plaintiffs to submit to the Court, within twenty days of this Order, a detailed accounting of fees and expenses incurred in relation to Plaintiffs' motion for spoliation sanctions.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** CCA's objections (Court File No. 145) and **ADOPTS** the Magistrate Judge's R&R (Court File No. 139) .

**SO ORDERED.**

**ENTER:**

/s/
CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE